Battle, J.
 

 No principle of law is better established than "that the confessions of a prisoner shall not be admitted as evidence against him, when they have been obtained from him through the influence of the passions of either hope, or fear. It is also well settled in this State, as well as in England, that when confessions have been thus extorted, any others subsequently made, shall be attributed to the same source, unless it be shown that, by means of a caution, or otherwise, the improper influence has been removed from the mind of the prisoner, so that the subsequent confessions cannot be taken t# have proceeded from it.
 
 Arch. Crim. Plea.
 
 129-130; 2
 
 Stark. on Ev.
 
 46;
 
 State
 
 v. Roberts, 1
 
 Dev. Rep.
 
 259. • But when the prisoner has received a proper caution, by which he is apprised that his confessions, if made, will be used against him, what he afterwards may say about the crime, with which he is charged, and his connection with it, is admissible as evidence against him, although he may formerly have made con
 
 *423
 
 fessions which had been extorted by threats, or induced by promises. See
 
 State
 
 v.
 
 Cowan, 7
 
 Ired. Rep. 239;
 
 State
 
 v. Gregory, ante 315. In the present case, we think, the prisoner was sufficiently cautioned to put him upon his guard, and that the confessions made afterwards must be deemed to have been free and voluntary.
 

 Upon the other point in the case, we are decidedly of opinion that the prisoner is entitled to a new trial. As to the cause of the death of the deceased, his Honor charged the jury that if they “should share in the donbt expressed by the doctor, that the blow had caused the immediate death, yet, if satisfied that the burning was the primary cause of the death, and the blow only hastened it, it would be tlieir duty to convict.” This instruction was given upon the supposition that the blow was inflicted by another personrand the proposition could be true only when the testimony connected the acts of such person with the prisoner, so as to make them both guilty, and we at first thought such was the proper construction to be put upon the language used by his Honor; but, upon reflection, wo are satisfied that a broader proposition was laid down, to wit: that if the prisoner inflicted a mortal wound, of which the deceased must surely die, and then an-' other person, having no connection with him, struck the child a blow:, which merelj hastened its death, the prisoner would still be guilty. The testimony presented a view of the case to which this proposition was applicable, and it becomes our duty to decide whether it cau be sustained npon any recognised principles of law.
 

 Murder, is the killing with malice prepense, a reasonable being, within the peace of the State. The act of killing, and the guilty intent, must concur to constitute the offense. An attempt, only, to kill with the most diabolical intent, may be moral, but cannot be legal, murder. If one man inflicts a mortal wound, of which the victim is .languishing, and then a second kills the deceased by an independent act, we cannot imagine how the first can^hit.said to have killed him, without involving the absurdity of saying that the deceased was
 
 *424
 
 killed twice. In such a case, the two persons could not be indicted as joint murderers, because there was no understanding, or connection between them. It is certain that the second person could be convicted of murder, if he killed with malice aforethought, and to convict the first would be assuming that he had also killed the same person at another time. Such a proposition cannot be sustained.
 

 The prisoner must have a new trial. This renders it unnecessary for ns to consider the effect of the alleged erroneous entry of the verdict. ’
 

 Pee Cujriam. Judgment reversed.